UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIRANDA L. POPE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. C12-2157-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Miranda Pope appeals the denial of her disability applications contending the ALJ erred (1) at step two by "fail[ing] to consider whether Plaintiff has a cyclothymic disorder or personality disorder,"[1] (2) at step three in failing to consider somatization disorder and ADHD,[2] and (3) by misevaluating the medical evidence and her residual functional capacity ("RFC").[3] Dkt. 16.  As discussed below, the Court recommends **REVERSING** the Commissioner and **REMANDING** the matter for further administrative proceedings pursuant to sentence four.

## BACKGROUND

The ALJ found at **steps two and three**, that somatization disorder, anxiety and panic

---

[1] Dkt. 16 at 20.
[2] *Id.* at 11.
[3] *Id.* at 20-25.

REPORT AND RECOMMENDATION - 1

disorder, borderline depression, marijuana abuse, gastroparesis, dysthymia, lumbar disc degeneration, attention deficit hyperactive disorder (ADHD), cyclical vomiting syndrome, GERD, and a history of migraine headache were severe impairments, and that these impairments did not meet or equal the requirements of the Listings.  The ALJ found Ms. Pope had the **RFC** to perform light work, limited to occasional postural (crouching, balancing, stooping, climbing, kneeling, and crawling) activities; that she should avoid exposure to hazards such as dangerous equipment, machinery and unprotected heights; and that she is limited to simple tasks, occasional contact with co-workers and minimal contact with the general public.  At **steps four and five**, the ALJ found Ms. Pope had no past relevant work, but that as there were jobs Ms. Pope could perform, she was not disabled.  Tr. 11-26.  The parties agree the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

**A.    The ALJ's step two findings**

Michael Gordin, M.D., diagnosed Ms. Pope with panic disorder, cyclothymic disorder, post traumatic stress disorder ("PTSD"), attention deficit disorder and borderline personality disorder.  Tr. 1355-73.  The ALJ noted these diagnoses but failed to discuss why cyclothymic disorder, PTSD, and borderline personality disorder were not severe impairments at step two.  Tr. 16.  Ms. Pope contends the ALJ erred.  Dkt. 16 at 20.  At step two, Ms. Pope had the burden to show (1) she had a medically determinable impairment or combination of impairments; and (2) the impairment or combination of impairments was severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c).  She met this burden given Dr. Gordin's diagnosis, and his treatment notes which indicated Ms. Pope needed psychotherapy treatment (Tr. 1357) and that her abdominal pain and vomiting was related to her mental disorders.  Tr. 1359.  The

REPORT AND RECOMMENDATION - 2

1   Commissioner does not contend otherwise but argues any error the ALJ may have committed
2   was harmless because Ms. Pope failed to show cyclothymic disorder, PTSD and borderline
3   personality disorder caused limitations not accounted for in the ALJ's determination of Ms.
4   Pope's RFC.  Dkt. 17 at 14.  This argument is unsupported.  Dr. Gordin noted Ms. Pope's
5   primary problems were vomiting, abdominal pain, and flu-like symptoms.  Referring to all of the
6   mental conditions he diagnosed, Dr. Gordin opined "[t]he psychological interpretation of list of
7   conditions is a desire to get rid of disturbing thoughts expressed physically through vomiting"
8   (Tr. 1359) and that "she reacts somatically to environmental events."  Tr. 1358.
9         The ALJ did not discuss cyclothymic disorder, post traumatic stress disorder and
10  borderline personality disorder, did not discuss how these psychological conditions caused Ms.
11  Pope to suffer physical symptoms, did not discuss how they caused Ms. Pope to react
12  somatically to her environment, and did not discuss the degree to which these conditions limited
13  Ms. Pope's ability to perform work.  In fact, other than noting Dr. Gordin's diagnoses, the ALJ
14  did not indicate what weight she was giving the opinions.  The Court could surmise that given
15  the ALJ's ultimate determination, the ALJ implicitly discounted Dr. Gordin's opinions.  But
16  implicit rejections are legally insufficient.  *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir.
17  1990) (mere summarization and implicit rejection of treating physician's opinion does not
18  suffice); *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989, as amended Oct. 19, 1989)
19  (broad and vague reasons will not suffice to support ALJ's conclusions).
20        Accordingly, as the ALJ's residual functional capacity findings failed to consider or
21  account for limitations caused by cyclothymic disorder, post traumatic stress disorder and
22  borderline personality disorder, the ALJ's step two error cannot be deemed harmless.  *See*  SSR
23  96-8p (In assessing a claimant's residual functional capacity, the ALJ must consider the

REPORT AND RECOMMENDATION - 3

limitations and restrictions caused by the claimant's medically determinable impairments, including any related symptoms); 20 C.F.R. § 416.945(a) (In determining claimant's RFC, ALJ must assess all the relevant evidence to determine claimant's work capacity); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (hypothetical questions to a VE must include all of the claimant's functional limitations, both physical and mental supported by the record).

By finding the ALJ erred, the Court is not implying benefits should be awarded. What still needs to be measured is the severity of the limitations caused by the above mental conditions either singly or in combination with Ms. Pope's other impairments. It would be inappropriate for the Court to make these determinations, in the first instance, and make findings normally reserved to the Commissioner such as an assessment of Ms. Pope's RFC. In a case such as this where the ALJ did not discuss certain mental impairments or assess what impact they had on Ms. Pope's ability to perform work, and where the record is not sufficiently developed for the Court to conclude Ms. Pope is disabled as a matter of law, the matter should be remanded for further proceedings. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (Remand for award of benefits only appropriate where the record has been fully developed and further administrative proceedings would serve no useful purpose).

**B.     The ALJ's step three findings**

Ms. Pope raised two claims related to step three. First, that the ALJ erred in failing to consider ADHD and somatoform disorder, and erred in failing to find somatoform disorder met the requirements of a listed impairment. Dkt. 16 at 9-19. And second that the ALJ's step three findings "materially conflict with the ALJ's step five finding," and that the ALJ thus erroneously found Ms. Pope had the RFC to perform jobs in the national economy at step five. Dkt. 16 at 7.

REPORT AND RECOMMENDATION - 4

### *1.     ADHD and Somatization disorder*

Ms. Pope argues the ALJ erred at step three in failing to discuss ADHD and erred by failing to find somatoform disorder met or equaled Listing 12.07. Ms. Pope failed to meet her burden to prove these conditions met the listings. *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007). As to ADHD, Ms. Pope's claim of error is not supported by any explanation or citation to the record establishing the ALJ erred at step three. This is unsurprising as there is nothing in the record showing ADHD is a disabling condition either singly or in combination with Ms. Pope's other conditions. In any event, it is not enough for Ms. Pope to present an argument in the skimpiest way, and leave the Court to do counsel's work—framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts. *See, e.g., Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review). The Court thus rejects the claim as wholly unsupported.

As to somatoform disorder, Listing 12.07 requires a claimant to establish the following:

> *Somatoform disorders*: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A.     Medically documented by evidence of one of the following:
>
> 1.     A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual

REPORT AND RECOMMENDATION - 5

        to take medicine frequently, see a physician often an altered life patterns significantly; or

    2.    Persistent non-organic disturbance of one of the following:

        a.    Vision; or
        b.    Speech; or
        c.    Hearing; or
        d.    Use of a limb; or
        e.    Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, diskineasia; or
        f.    Sensation (e.g., diminished or heightened).

    3.    Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

    B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or

    2.    Marked difficulties in maintaining social functioning; or

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, App. 1, section 12.07.  Ms. Pope argues she met Listing 12.07 based on the opinions of examining doctor Kerry Bartlett, Ph.D., treating doctors Christopher Reitz, M.D., and James Schoenecker, M.D., and treating counselor Jamie Fergoda, LICSW.  Dkt. 16 at 12-15.  Dr. Bartlett, however, never opined Ms. Pope's somatoform disorder met the Listings.  Under the DSM-IV diagnostic impressions section of her written evaluation, Dr. Bartlett diagnosed Ms. Pope with Axis I clinical disorders of depressive disorder, anxiety disorder, and undifferentiated somatoform disorder, and with Axis III medical conditions of gastric concerns, lower back concerns and migraine headaches.  Tr. 1410-11.

REPORT AND RECOMMENDATION - 6

Dr. Bartlett opined Ms. Pope could not work opining "based solely upon [Ms. Pope's] self-report it would appear that her **medical** concerns are sufficiently impacting her that she would not be able to maintain the level of consistent attendance and performance normally associated with competitive employment." Tr. 1410 (emphasis added). Hence, it is plain to see that it was Dr. Bartlett's opinions Ms. Pole could not work due to medical problems which under Axis III of the DSM- IV are physical in nature, not mental in nature. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 27–30 (4th ed. 2000) ("DSM–IV") (differentiating between Axis I and II, which relate to clinical disorders, and Axis III, which relates to "current general medical conditions"). Dr. Bartlett also opined Ms. Pope's "anxiety-based concerns" would make it difficult for her to tolerate conflict or "performance scrutiny." *Id.* But this opinion goes to the doctor's diagnosis of anxiety disorder, not Ms. Pope's somatoform disorder.

Drs. Reitz and Schoenecker also never opined Somatoform disorder met the Listings. Dr. Schoenecker, a gastroenterologist, opined Ms. Pope's irritable bowel syndrome was exacerbated by "co-existing panic disorder/borderline personality disorder/ADHD." Tr. 1265. But the doctor did not mention somatoform disorder, or discuss whether the above mental conditions affected Ms. Pope's functioning. Dr. Reitz, another gastroenterologist, noted that according to Dr. Gordin, Ms. Pope "most likely has severe post traumatic disorder with abdominal pain." Tr. 1924. But other than reporting what Dr. Gordin stated, Dr. Reitz did not himself diagnosis Ms. Pope with any mental conditions or render any opinions as to whether such conditions limited her functioning. Moreover, Dr. Reitz never opined that somatoform disorder was disabling.

In short, the medical opinions of Drs. Bartlettt, Reitz and Schoenecker do not support Ms. Pope's claim that the ALJ erred in failing to find somatoform disorder met the Listings. As such,

REPORT AND RECOMMENDATION - 7

although the ALJ failed to specifically discuss the opinions at step three, that failure was harmless.  Ms. Fergoda's opinions likewise do not establish Ms. Pope's somatoform disorder met the Listings.  Ms. Pope points to a progress report Ms. Fergoda prepared on March 4, 2011.  Dkt. 16 at 12 (citing Tr. 1911).  In that report, Ms. Fergoda opined "Ms. Pope is struggling with chronic health condition, anxiety (features of PTSD, Panic and Social Phobia), depression and fatigue." *Id*.  But, other than listing somatoform disorder under "diagnosis," Ms. Fergoda makes no mention of somatoform disorder, or what impact, if any, it had on Ms. Pope's functioning. *Id*.

Ms. Pope also argues the ALJ erred at step three by failing to find somatoform disorder met the Listings when considered in combination with her other severe impairments.  Dkt. 16 at 16-17.  This is a conclusory and unsupported claim.  Further, as noted above, Drs. Bartlett, Reitz and Schoenecher, Ms. Fergoda, and the other medical sources did not opine that somatoform disorder limited Ms. Pope's functioning, or that somatoform disorder in combination with other disorders impaired Ms. Pope to the extent that she met the Listings.

Accordingly, Ms. Pope's claim the evidence shows "she has a combination of mental impairments that meet or equal Listing 12.07," the Listing for somatoform disorder, fails.  The record shows that while Ms. Pope was diagnosed with somatoform disorder, no doctor or other source opined that the disorder either singly or in combination with other disorders was so severe that Ms. Pope met the requirements of Listing 12.07.

### 2. *Consistency of the ALJ's step three and five findings*

The ALJ found at step three:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties.  She is **not** able to sustain focus attention and concentration sufficiently long enough to permit the timely and appropriate completion of task [sic] commonly found in routine and repetitive, not detailed or complex, work settings.

REPORT AND RECOMMENDATION - 8

Ms. Pope claims this finding undermines the ALJ's determination of her RFC and the ALJ's step five finding that there is work Ms. Pope can perform. According to Ms. Pope, this sentence indicates the ALJ found she could **not** perform routine and repetitive work. The Commissioner disagrees and contends the word **not** is a typographical error. The Court agrees with the Commissioner. A reviewing court may consider whether the parts of speech used in a sentence indicate a typographical error and whether the error can be logically reconciled with the sentence as a whole. This is because a District Court should not ignore the real finding of the ALJ and instead blindly follow the words of a written decision no matter how nonsensical they may be. Of course while a District Court may examine the ALJ's decision as a whole to understand the true meaning of the ALJ's findings, a Court should not go beyond the administrative record, or engage in speculation.

Here, without engaging in speculation, it is clear the ALJ's written decision contains an obvious typographical error. The sentence utilizes a double negative using the word **"not"** twice. The inclusion of the first **"not"** renders the sentence senseless as it leads to the conclusion the ALJ found Ms. Pope could **not** perform "routine and repetitive," but could perform detailed or complex, work settings. This make no sense for it is inconceivable a person could perform detailed or complex work but not routine and repetitive work. However, with the exclusion of the first **"not,"** the sentence makes sense for it would then read:

> She is [  ] able to sustain focus attention and concentration sufficiently long enough to permit the timely and appropriate completion of task [sic] commonly found in routine and repetitive, not detailed or complex, work settings.

This would be a logical finding indicating the claimant is limited to routine and repetitive work but cannot perform detailed or complex work. This would also be consistent with the ALJ's finding that Ms. Pope had the RFC to perform work limited to simple tasks. Accordingly,

REPORT AND RECOMMENDATION - 9

based on the context of the sentence and the ALJ's decision as a whole, the Court concludes the inclusion of the first **"not"** was a typographical error.  The Court also concludes a typographical error such as the one here, which is contrary to the record is not sufficient to warrant the reversal of an ALJ's decision.  *See, e.g., Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1199 (E.D. Mo. 2004) (noting in the context of the entire decision, it is clear the ALJ found the claimant "can" perform simple and repetitive tasks, not "cannot");  *cf., Lemke v. Comm'r Soc. Sec. Admin*, 380 Fed. Appx. 599, 601 (9th Cir. 2010) (ALJ's reference to "Rule 201.XX" was a harmless typographical error; given record it is clear the ALJ intended to reference Rule 201.24).

**C.     The ALJ's evaluation of the medical evidence**

Ms. Pope contends by misevaluating the opinions of Drs. Gordin, Reitz, Schoenecker and Bartlett, and the opinion of Ms. Fergoda, the ALJ improperly determined she retained the RFC to perform work at step five, and improperly discounted her credibility.  Dkt. 16 at 20-25.

As to the evaluation of the medical evidence, the Court has already noted the ALJ's failure to discuss Dr. Gordin's diagnoses regarding cyclothymic disorder, post traumatic stress disorder and borderline personality disorder, failure to discuss how these psychological conditions caused Ms. Pope to suffer physical symptoms, and failure to discuss how these mental conditions caused Ms. Pope to react somatically to her environment could not be deemed to be harmless error.  Accordingly, on remand, the ALJ should assess Dr. Gordin's opinions.

The ALJ, however, did not similarly err in evaluating the opinions of Drs. Reitz, Schoenecker, and Bartlett, and the opinion of Ms. Fergoda.  Dr. Reitz did not diagnose Ms. Pope with mental problems or give an opinion as to the extent to which her mental or physical conditions impaired her.  Rather, he simply repeated statements Dr. Gordin made to him.  Dr. Schoenecker noted Ms. Pope's abdominal problems were exacerbated by her mental conditions

REPORT AND RECOMMENDATION - 10

but provided no opinions as to whether any of medical or mental conditions limited her.  Hence, neither doctor rendered an opinion which if considered would have affected the findings the ALJ ultimately made.  The ALJ is thus affirmed as to his evaluation of the opinions of Drs. Reitz and Schoenecker.

Dr. Bartlett opined Ms. Pope could not perform work due to her medical condition and due to her anxiety.  The ALJ discounted Dr. Bartlett's opinions first finding they were inconsistent with the medical record as a whole.  Tr. 23.  Ms. Pope argues this is a conclusory finding and thus improper.  Dkt. 16 at 21-22.  The strength of this argument is diluted by the fact that Ms. Pope fails to point to anything in the record showing the ALJ was wrong.  The argument is further diluted by the fact that Dr. Bartlett's opinion differs from the opinions of Drs. Gordin and Schoenecker.  Dr. Gordin did not diagnose Ms. Pope as having anxiety disorder and opined Ms. Pope's problem was the desire to get rid of disturbing thoughts through vomiting and reacting somatically.  Dr. Schoenecker opined Ms. Pope's abdominal problems were exacerbated by existing panic disorder/borderline personality disorder/ADHD, but did not mention anxiety disorder.  An ALJ may properly reject a treating physician's opinion that is inconsistent with the record and not supported by objective evidence.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Lester v. Chater*, 81 F3d 821, 831 (9th Cir. 1995).  Given the record here, the Court cannot say the ALJ erred.

The ALJ also discounted Dr. Bartlett's opinions finding "the undersigned notes that the examiner was not aware of the marijuana usage and other narcotic seeking practices of the claimant."  Tr. 23.  Ms. Pope has not challenged this finding and the record supports the ALJ's determination.  For example, the record showed Dr. Reitz reported "interestingly a drug screen, after stating that she took vicodin a few hour beforehand, turned up completely negative

REPORT AND RECOMMENDATION - 11

regarding all opiates. Amphetamines were found. She admits to smoking marijuana . . . I have therefore had to refuse further pain medication refills for her and will have to transition that part of her care to Dr. Shaw." Tr. 1925. The extent to which a doctor is familiar with other information in a claimant's case record is a relevant factor in deciding the weight to give to a medical opinion. 20 C.F.R. § 404.1527(d)(6). Accordingly, the ALJ's finding Dr. Bennett was not aware of Ms. Pope's full diagnostic picture was a specific and legitimate reason, supported by substantial evidence, to give Dr. Bennett's opinions less weight.

      Ms. Pope also argues the ALJ erred in failing to consider the opinions of Ms. Fergoda or reasons to disregard her opinions. Dkt. 16 at 21. Other than making this conclusory statement, Ms. Pope fails to present anything showing the ALJ committed harmful error. In any event, in reviewing the progress report Ms. Fergoda prepared, the Court cannot say the ALJ erred. The ALJ found all of the impairments listed in Ms. Fergoda's report were severe impairments at step two. Ms. Fergoda did not give an opinion as to Ms. Pope's functional limitations. Rather she noted Ms. Pope was the "primary parent" of her two children; that Ms. Pope's daily activities were "impacted" by "panic attacks, social anxiety, fatigue and pain"; that Ms. Pope was struggling with chronic health conditions, anxiety, depression and fatigue, and that she is engaging in services to improve her ability to manage anxiety and depression. Tr. 1911. These comments set forth little beyond what the ALJ found at step two, i.e., that Ms. Pope has mental health impairments that more than minimally affected her ability to work. Given the substance of Ms. Fergoda's report, the Court cannot say that Ms. Fergoda rendered an opinion that Ms. Pope was more limited than the ALJ found.

**D.    The ALJ's assessment of Ms. Pope's credibility**

      The ALJ discounted Ms. Pope's testimony finding she was consciously attempting to

portray limitations not actually present in order to obtain drugs. Tr. 22. The ALJ found Ms. Pope's marijuana use was chronic (Tr. 22); that she stole her mother's benzodiazepines, methadone and opiates (Tr. 21); that she was denied pain medication at an ER visit because the doctors "could not believe her"; that she self-medicates by using her mother's valium (Tr. 20); that her medical records indicated concerns of "drug seeking behavior" (Tr. 22); and the doctor who examined her for " horrible headaches" indicated "I am concerned that this patient seems to have no interest in any standard approaches and seems to want narcotics." Tr. 23. As Ms. Pope has not challenged these findings and as an ALJ may discount a claimant's credibility based on drug-seeking behavior the Court affirms the ALJ's credibility determination. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding evidence of drug-seeking behavior undermines a claimant's credibility); *Gray v. Comm'r of Soc. Sec.*, 365 Fed. Appx. 60, 63 (9th Cir. 2010) (evidence of drug-seeking behavior is a valid reason for finding a claimant not credible).

## CONCLUSION

For the foregoing reasons, the Court recommends **REVERSING** the Commissioner's decision and **REMANDING** the case for further administrative proceedings pursuant to sentence four. The Court affirms the ALJ's findings as to Ms. Pope's credibility, and the ALJ's evaluation of the opinions of Drs. Reitz, Schoenecker and Bartlett, and the opinion of Ms. Fergoda. However, the ALJ committed harmful legal error in failing to discuss Dr. Gordin's diagnoses of cyclothymic disorder, post traumatic stress disorder and borderline personality disorder; in failing to discuss how these conditions caused Ms. Pope to suffer physical symptoms; in failing to discuss how they caused Ms. Pope to react somatically to her environment; and in failing to discuss the degree to which these conditions limited Ms. Pope's

ability to perform work.  On remand, the ALJ should utilizing the five step disability evaluation process, assess Dr. Gordin's diagnoses, and develop the record as the ALJ deems necessary.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **July 3, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **July 5, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 19th day of June, 2013.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14